1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

8

9

10

11 ARSINE S.,[1]                          )   NO. CV 17-7682-KS
                    Plaintiff,            )
12         v.                             )
                                          )   MEMORANDUM OPINION AND ORDER
13                                        )
   NANCY A. BERRYHILL, Acting             )
14 Commissioner of Social Security,       )
                    Defendant.            )
15                                        )
16 _____    )

17

18                              **INTRODUCTION**

19

20         Plaintiff filed a Complaint on October 20, 2017, seeking review of the denial of her

21 application for a period of disability and Disability Insurance Benefits ("DIB") under Title II

22 of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C.

23 § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9-

24 11.) On June 13, 2018, the parties filed a Joint Stipulation. (Dkt. No. 17 ("Joint Stip.").)

25 Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for

26 an immediate award of benefits. (Joint Stip. at 41.) The Commissioner requests that the

27

28

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Law Judge's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 41-43.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 24, 2014, Plaintiff protectively filed an application for a period of disability and DIB.[2] (Administrative Record ("AR") 23, 60, 123-29.) Plaintiff alleged disability commencing on December 31, 2012 due to "lower back disc disease with left leg pain also; numbness and tingling in my left leg when pain is severe; wrists, fingers, and knees pain especially the left one; [and] stiffness/pain in my neck likely due to arthritis." (AR 147-53 (errors in original).) Her "date last insured" for DIB eligibility was December 31, 2017. (AR 23, 60.) After the Commissioner denied Plaintiff's application initially (AR 60-67), Plaintiff requested a hearing (AR 75-76).

At a hearing held on March 1, 2016, at which Plaintiff was assisted by an interpreter[3] and appeared with a non-attorney representative, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (AR 33-59.) On May 5, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 23-29.) On September 8, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

//
//
//
//

---

[2]  Plaintiff was 50 years old on the application date and thus met the agency's definition of a person closely approaching advanced age. *See* 20 C.F.R. § 404.1563(d). (*See* AR 60.)

[3]  The hearing transcript does not indicate in what language the interpreter, Oliver Petrosian, provided interpretation for Plaintiff. (*See* AR 35.) The medical record lists Plaintiff's primary language as Armenian. (AR 253.)

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five-step sequential evaluation process, the ALJ initially found that Plaintiff met the insured status requirements through December 31, 2017. (AR 25; 20 C.F.R. § 404.1520.) The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date of July 10, 2013.[4] (AR 25.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative osteoarthritis of the left knee, degenerative disc disease of the lumbar spine, and degenerative disc disease of the cervical spine. (AR 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 26.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with no additional limitations. (AR 26.) Based on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Plaintiff could perform her past relevant work classified as an automatic car was attendant. (AR 28.) Having determined that Plaintiff could perform her past relevant work, the ALJ did not reach step five. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

---

4    Plaintiff's application alleged disability as of December 31, 2012. (AR 123.) At the ALJ Hearing, her non-attorney representative amended Plaintiff's alleged disability onset date to July 10, 2013, her fiftieth birthday. (AR 56.) The ALJ did not ask Plaintiff if she understood and agreed to this change and Plaintiff did not specify one way or another.

reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff raises three issues. The first issue is whether the ALJ properly evaluated the medical evidence including the medical opinion of Plaintiff's treating physician. (Joint Stip.

4

at 3, 9-14.)  The second issue is whether the ALJ properly evaluated Plaintiff's credibility.  (*Id.* at 3.)  The third issue raised is whether the ALJ properly evaluated the vocational evidence.  (*Id.*)  For the reasons discussed below, the Court concludes that these issues warrant reversal of the ALJ's decision.

## I.     The ALJ Failed To Properly Evaluate the Medical Evidence and Plaintiff's Treating Physician's Opinion (Issue One)

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence including the opinion of her doctor, Dr. Noobar Janoian.  (Joint Stip. at 3, 9-14.)

### A.     Record Evidence

It appears Plaintiff began treating with Dr. Noobar Janoian, M.D. in January 2014 at All For Health, Health For All, a community health center ("the clinic").  (*See* AR 253-55, 319.)  She continued to receive treatment at the clinic through at least January 22, 2016.  (*See* AR 319.)

On January 23, 2014, Plaintiff reported having back pain for three months, numbness in her legs while sleeping, pain in her ankles, knees, wrists, and spine that was constant, and she reported waking up at night.  (AR 253.)  Plaintiff stated she had x-rays taken in 2004.  (AR 253.)  The record notes Plaintiff measured at 5'1" and weighed 117 pounds.  (AR 254.)  Plaintiff had a sedentary activity level but exercised by walking.  (AR 254.)  Her medications included Celebrex, a prescription medication for treating arthritis.[5]  (AR 254.)  Plaintiff reported "ibuprofen and aleve help slightly."  (AR 253.)  Dr. Janoian noted the physical exam was "unremarkable;" Plaintiff's musculature was normal, and she did not have

---

[5]      *See* https://www.drugs.com/search.php?searchterm=Celebrex&a=1 (last visited on January 14, 2019).

"skeletal tenderness or joint deformity," but he noted she was positive for back pain, bone/joint symptoms, and myalgias. (AR 254-55.) He prescribed Naprosyn, tramadol, and continued the Celebrex. (AR 255.)

A CT scan of Plaintiff's lumbar spine dated December 13, 2004 found that Plaintiff had mild diffuse disc bulging at the L4-5 level, central disc profusion at the L5-S1 level with thecal sac and nerve root compression, mild hypertrophy of the facet joints, mild neuroforaminal narrowing at the L4-L5-S1 levels, and sacralization of L5. (AR 260.) The report was sent to Doctor. S. Samimi. (AR 260.) No other records from this doctor appear to be in the record.

On January 28, 2014, Plaintiff underwent a CT scan of her lumbar spine that showed diffuse disc protrusion at L4-5 and L5-S1 with thecal sac and nerve root compression, facet joint hypertrophy causing neuroforaminal narrowing at L4-L5-S1 levels, and spinal canal stenosis from L3 to S1. (AR 261.) It also showed disc space narrowing with vacuum phenomenon at the L4-5 and L5-S1 levels. (AR 261.) The report was sent to Dr. Janoian. (AR 261.) On January 28, 2014, Plaintiff also underwent a scan of her left knee. (AR 262.) It showed degenerative osteoarthritis of the left knee. (AR 262.) This report too was sent to Dr. Janoian. (AR 262.)

On February 6, 2014, Plaintiff returned to the clinic to discuss her test results and she reported she still had back pain. (AR 256.) The medical record indicates that Plaintiff's "CT scan shows diffuse disc protrusion at L4 L5 S1 [with] nerve root compression, facet joint hypertrophy [with] neuroforaminal narrowing L4 L5 S1 levels, [and] spinal [canal] stenosis L3 to S1." (AR 256.) Nurse Practitioner ("NP") Estee E. Perlmutter assessed Plaintiff with lumbago, referred her to physical therapy, and continued her medications. (AR 257.)

//

//

6

On March 27, 2014, Plaintiff reported severe left knee pain that was getting worse such that she was unable to walk regularly and she was having difficulty with stairs. (AR 258.) She also reported she was gaining weight, which upset her. (AR 258.) Her weight was documented to be 120 pounds. (AR 258-59.) The report noted Plaintiff was still waiting for the physical therapy referral and added her knee to the recommendation for physical therapy. (AR 259.) Plaintiff received a steroid injection in her left knee that day. (AR 259.)

On May 19, 2014, Plaintiff reported back pain and experiencing left shoulder pain for one week that included numbness and tingling in her fingers and stiffness in her neck. (AR 269.) Plaintiff's Spurling's test results were "questionable." (AR 270.) She was referred for a cervical spine x-ray. (AR 271.)

On May 28, 2014, Plaintiff underwent an x-ray of her cervical spine that showed a loss of normal cervical lordosis possibly from patient positioning or indicating muscle spasm. (AR 317.) It showed mild degenerative disc disease at the C4-5 and C5-6 levels and moderate degenerative disc disease at the C6-7 level. (AR 317.) The report noted because of the disc height loss that, "[i]f patient is experiencing clinical signs and symptoms of neuropathy or radiculopathy, a dedicated cervical spine MRI could be performed for further evaluation." (AR 317.) The report was sent to Doctor Leonardo Garduno, M.D. but "Vardanyan"[6] was handwritten under Dr. Garduno's name and it was included in the clinic's submission of Plaintiff's medical records. (AR 317; *see also* AR 313.) Imaging of her thoracic spine on the same day revealed normal findings. (AR 318.)

A June 21, 2014 MRI of her cervical spine showed multilevel cervical spondylosis, broad-based disc osteophyte complex with degenerative change and narrowing of the ventral

---

[6] Artur Vardanyan, M.D. treated Plaintiff at the clinic. (*See* AR 319-23.)

cerebrospinal fluid space and neural foramens at the C3-4, C4-5, C5-6, and C6-7 levels. (AR 315-16.)  It also revealed a small central annular tear at the C5-6 level.  (AR 315.)  The report was sent to Dr. Garduno.  (AR 315.)

On July 24, 2014, Plaintiff reported continued back pain but had started physical therapy.  (AR 274.)  She reported taking naproxen and the examination showed her cervical spine was tender.  (AR 274-275.)  The plan and assessment included continuing Plaintiff's physical therapy and naprosyn prescription, but the treating notes indicate that her Celebrex and tramadol prescriptions were stopped on July 24, 2014.  (AR 275.)

On September 18, 2014, Plaintiff reported fatigue, which the clinic associated with depression.  (AR 358-60.)  She also reported pain from bunions, but otherwise reported no joint pain.  (AR 359-60.)

On October 8, 2014, Plaintiff reported incapacitating neck pain including decreased mobility, joint pain, muscle spasm, numbness, and tenderness.  (AR 357.)  The report also notes back pain.  (AR 356.)  Physical examination showed her cervical spine was tender. (AR 356.)  Plaintiff received an injection of Toradol, a prescription for Vicodin and muscle relaxers, and referrals to physical therapy and an orthopedist.  (AR 355-56.)

On December 2, 2014, Plaintiff reported neck pain and left knee joint pain, instability, tenderness, numbness, and swelling.  (AR 354.)

On December 18, 2014, Plaintiff underwent a bone density scan.  (AR 314.)  It found Plaintiff has osteoporosis.  (AR 314.)  The report was sent to Dr. Garduno.  (AR 314.)

On January 13, 2015, Plaintiff underwent an MRI of her left knee.  (AR 313.)  It showed chondral thinning and irregularity of varying degrees in the medial, lateral, and

1  patellofemoral compartments with subchondral reactive marrow signal change in the medial

2  and patellofemoral compartments.  (AR 313.)  The second page of this record appears to be

3  missing.  The report was sent to Dr. Garduno.  (AR 313.)

4

5        On May 14, 2015, Plaintiff reported back pain, joint pain, and muscle weakness.  (*See*

6  AR 341-42.)  She received an injection of Toradol in her left arm.  (AR 343.)

7

8        On July 31, 2015, Plaintiff reported chronic back, body, and joint aches.  (AR 337.)

9  The report notes fatigue, back pain, joint pain, muscle weakness, and extremity weakness

10 and numbness.  (AR 338.)  Her lumbar spine range of motion was reduced.  (AR 339.)

11

12       On September 14, 2015, Plaintiff reported intermittent left ankle pain and constant left

13 knee pain.  (AR 330.)  The report also notes gait disturbance, swelling, fatigue, back pain,

14 decreased mobility, joint pain, joint swelling, joint tenderness, limping, and muscle

15 weakness.  (AR 332.)  Physical exam reflected swelling and decreased range of motion in

16 her left ankle and swelling and pain with motion in her left knee.  (AR 333.)  The clinic

17 indicated Plaintiff would be referred to a podiatrist for her ankle and directed her to follow

18 up with her orthopedist for her knee.  (AR 333.)

19

20       On December 3, 2015, Plaintiff reported knee pain, generalized weakness, fatigue, low

21 energy, and chronic aches in her back, body, and multiple joints including left knee, right

22 upper back, and right shoulder.  (AR 324.)  Her lumbar spine range of motion was decreased.

23 (AR 327.)  Her right shoulder and left knee range of motion were not decreased but there

24 was pain with motion.  (AR 327.)

25

26       On January 22, 2016, Plaintiff requested a refill of her medication and reported

27 chronic knee and lumbar back pain.  (AR 319.)  She also said the weekly gel injections to her

28

left knee provided "minimal to no improvement so far." (AR 319.) Her range of motion in both her lumbar spine and left knee were moderately reduced. (AR 322.)

On January 30, 2016, Plaintiff underwent an MRI of her lumbar spine. (AR 312.) It showed disc desiccation, mild disc height loss throughout the lumbar spine with moderate disc height loss at the L5-S1 level, and partial lumbarization of the S1 vertebral body. (AR 312.) At the L1-2 level, it revealed posterior disc extrusion resulting in mild central canal stenosis and mild left neural foraminal narrowing. (AR 312.) At the L4-5 level, it showed posterior disc protrusion resulting in mild central canal stenosis, moderate left neural foraminal narrowing, and mild right neural foraminal narrowing. (AR 312.) At the L5-S1 level, it showed a broad-based posterior disc protrusion, degenerative facet disease, and redundancy of ligamentum flavum resulting in mild to moderate bilateral neural foraminal narrowing and mild central canal stenosis. (AR 312.) Overall it found mild to moderate spondylosis, central canal stenosis, and neural foraminal narrowing at multiple levels. (AR 312.) The report was sent to Dr. Garduno. (AR 312.)

Plaintiff received treatment from Doctor Ramin Ganjianpour, M.D., an orthopedic surgeon, from January 28, 2015 through February 3, 2016. (AR 290-303.) His initial assessment was left knee chondromalacia. (AR 302.) Plaintiff reported that medication only helped marginally and Dr. Ganjianpour gave her a cortisone injection to her left knee. (AR 301.) It was "a little" helpful so a few weeks later, she received another cortisone injection. (AR 300.) Six months later, she reported the cortisone injections did not help and she was still experiencing knee pain and low back pain, so Dr. Ganjianpour requested an MRI of her lumbar spine and Synvisc injections for left knee. (AR 298.) Roughly three months later, she received her first Synvisc injection. (AR 295.) Two weeks later, when Plaintiff received her third Synvisc injection, she reported that she was still having left knee pain and trouble walking and examination showed tenderness to palpation along the medial joint line. (AR 291.) She also reported lower back pain and examination revealed positive straight leg raise

tests and Dr. Ganjianpour noted previous MRIs showed degenerative disc disease and central canal stenosis in her lumbar spine. (AR 291.) He indicated he wanted to receive authorization for consultation of her back pain, authorization for cortisone shots for the SI joints, and he gave her a prescription for gabapentin. (AR 291.) Plaintiff missed two of her appointments with Dr. Ganjianpour, one on May 22, 2015 and one on January 6, 2016. (AR 296, 299.)

On February 23, 2016, Plaintiff underwent an MRI of her left knee. (AR 310.) It showed high grade chondromalacia of the patella, scarring of the infrapatellar Hoffa's fat pad, a small amount of joint fluid, subchondral marrow edema, and mild osteoarthritic changes. (AR 31.) The report was sent to Dr. Janoian. (AR 310-11.)

## B. Dr. Janoian's Medical Opinion

Doctor Noobar Janoian, M.D. specializes in family practice. (AR 376.) On February 6, 2016, he completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (AR 373-76.) He opined Plaintiff could occasionally lift twenty pounds, but could only lift less than ten pounds frequently. (AR 373.) He stated she can only stand or walk for two hours in an eight-hour workday. (*Id.*) Dr. Janoian wrote under these opinions that Plaintiff has low back pain with bilateral sciatica resulting from bilateral multilevel degenerative disc disease of the lumbar spine, neck pain with bilateral radiation resulting from cervical spondylosis, and bilateral knee pain resulting from degenerative osteoarthritis. (*Id.*) He opined that Plaintiff needs to alternate between sitting and standing because of back pain with sciatica and numbness aggravated by prolonged sitting. (AR 374.) He also referenced her osteoporosis, body aches, and pain in her ankle, left foot, and knee. (*Id.*) Dr. Janoian also opined that Plaintiff was moderately limited in her upper extremities. (*Id.*) He did not check the box indicating any limitation in her lower extremities but wrote "mod - severe" next to it. (*Id.*)

11

With respect to postural limitations, Dr. Janoian noted that Plaintiff could occasionally balance and climb ramps and stairs, she could rarely kneel, crouch, and stoop, and she could never crawl. (*Id.*) Under these postural limitations, he wrote "back, neck, knee/ankle/foot – chronic/recurrent pain, weakness – poor balance w/ mod- severe pain episodes." (*Id.*) For manipulative limitations, he noted that Plaintiff was limited to occasionally reaching, handing, fingering, and feeling. (AR 375.) He based this finding on neck pain, numbness in both hands in the first and second digits, and decreased grip strength. (*Id.*) He noted Plaintiff did not have any visual or communicative limitations. (*Id.*) He opined that Plaintiff's attention and concentrative were compromised by pain but not by prescribed medication. (*Id.*) For environmental limitations, Dr. Janoian checked limitations to temperature extremes, vibration, humidity/wetness, and hazards but not to noise, dust, or fumes. (AR 376.) He wrote Plaintiff should avoid all hazards during pain episodes and should avoid aggravating factors of back, neck, bone, and joint symptoms. (*Id.*)

## C. Applicable Law

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. 404.1527.[7] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Id.* If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.*

//

---

[7] Effective March 27, 2017, the Social Security Administration revised its regulations directing the evaluation of medical opinion evidence, including 20 C.F.R § 404.1527. But these revisions are not applicable or relevant to the analysis here relating to Plaintiff's January 24, 2014 application for DIB benefits.

An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632.

**D.    Analysis**

Plaintiff argues that the ALJ erred in discounting Dr. Janoian's opinion. (Joint Stip. at 10.) The ALJ accorded "little weight" to Dr. Janoian's opinion as Plaintiff's treating physician, while giving "substantial weight" to the state agency's physical assessment. (AR 28.) Dr. Janoian's opinion is contradicted by that of Dr. Bill Payne, the state agency doctor, therefore, to reject Dr. Janoian's opinion, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632.

The ALJ's first reason for discounting Dr. Janoian's opinion was that the sedentary restriction opined was "too restrictive and contrary to the overall record and the lack of any surgical procedures." (AR 28.) The ALJ's statement that the opinion is "too restrictive and contrary to the overall record" is conclusory. The ALJ fails to identify any specific portions of the record that are inconsistent with Dr. Janoian's opinion as to Plaintiff's limitations other than stating "[t]here are no indications that the claimant needed to alternate sitting and standing periodically." (*Id.*) The ALJ also concluded that Dr. Janoian imposed upper extremity limitations that were not "adequately supported in the record in light of [Plaintiff's] sporadic back and shoulder complaints." (*Id.*) Yet in making this determination, the ALJ does not discuss the extensive evidence of chronic degenerative disc disease that is reflected in Plaintiff's MRI scans and treatment notes.

With respect to surgical intervention, while none is documented in Plaintiff's record, this is not, standing alone, a permissible reason to reject a treating physician's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017). In *Trevizo*, the ALJ had noted in her

decision that the claimant's doctor did not order "an MRI, steroid injections, block injections, recommendations for surgery, or even a referral to an orthopedic surgeon," but the ALJ did not rely on these reasons when rejecting the treating physician's opinion. *Id.* But the Ninth Circuit still held that "the failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability." *Id.* Unlike the plaintiff in *Trevizo*, Plaintiff in this case has undergone many MRIs, physical therapy, received cortisone, steroid, Toradol, gel, and Synvisc injections, and been referred to an orthopedist who requested additional diagnostic imaging and authorization for additional injections. (AR 259, 274, 298, 291, 301, 310, 312, 313, 315, 319, 356.) While Dr. Janoian did not personally request all of these treatments for Plaintiff, the treatments, except for those provided by the orthopedist, are all from the same clinic, All For Health, Health For All. (*See id.*) Regardless, the ALJ did not rely on the fact that Dr. Janoian was not the only doctor treating Plaintiff at the clinic and the Court "may not affirm the ALJ on a ground upon which [she] did not rely." *Orn*, 495 F.3d at 630 (citation omitted). Further, *Trevizo* makes clear that not requesting more aggressive treatment is not enough on its own to reject a treating physician's opinion. 871 F.3d at 677. Accordingly, this was not a specific and legitimate reason to reject Dr. Janoian's medical opinion.

The second reason the ALJ relied on was the record showed, "no indications that [Plaintiff] needed to alternate sitting and standing periodically." (AR 28.) Dr. Janoian explained the basis of his opinion in this regard. The line on the questionnaire under item 3 indicating this requirement says in parenthesis: "If checked, explain in item 5." (AR 374.) Under item 5, Dr. Janoian wrote "back pain w/ sciatica – numbness aggravated on prolonged sitting." (AR 374.) The ALJ found and objective tests support that Plaintiff has degenerative disc disease of the lumbar spine. (*See* AR 25, 261, 291, 312.) Multiple records reflect Plaintiff reported numbness and lower back pain. (*See* AR 253, 274, 338, 354.) "The Commissioner is required to give weight not only to the treating physician's clinical findings

14

and interpretation of test results, but also to his subjective judgments. *Lester*, 81 F.3d at 832-33 (citation omitted). Because Dr. Janoian explained the basis of his opinion and that basis is not contrary to the record, the ALJ erred in rejecting his opinion regarding Plaintiff's sitting and standing limitations. Thus, this reason is not a specific and legitimate reason supported by substantial evidence in the record.

The third reason the ALJ relied on was: "Dr. Janoian also imposed upper extremity limitations that are not adequately supported in the record in light of the claimant's sporadic back and shoulder complaints." (AR 28.) Under manipulative limitations, Dr. Janoian wrote that the basis of his opinion was Plaintiff's neck pain, numbness in her hands, and decreased grip strength. (AR 375.) The ALJ found, and objective tests support, that Plaintiff has degenerative disc disease of the cervical spine. (*See* AR 25, 315, 317.) Because Dr. Janoian's opinion concerning Plaintiff's upper extremities was not based on Plaintiff's back or shoulder complaints, this was not a specific and legitimate reason for the ALJ to rely on to reject that opinion.

The fourth reason the ALJ relied on to reject Dr. Janoian's opinion was that Plaintiff testified her knee had worsened, and the ALJ inferred that "Dr. Janoian's limitations could represent a later functional capacity evaluation that does not reflect a 12-month durational requirement." (AR 28.) The ALJ found, and objective tests support, that Plaintiff has degenerative osteoarthritis of the left knee. (*See* AR 25, 262, 310, 313.) On the medical opinion questionnaire, Dr. Janoian wrote, "knee pain [bilateral] – degenerative osteoarthritis." (AR 373.) Generally, when an ALJ is trying to determine whether a Plaintiff with a degenerative disease is disabled, more recent medical reports are more probative. *Magallanes v. Bowen*, 881 F.2d 747, 754-55 (9th Cir. 1989.) Here, the ALJ was assessing whether Plaintiff was disabled, thus, Dr. Janoian's opinion in February 2016 should have been given more weight, not less. *See Magallanes*, 881 F.2d at 754-55. To the extent that the ALJ was unclear on the basis of Dr. Janoian's opinion, saying it "could represent a later

15

functional capacity evaluation…," the ALJ had an affirmative duty to develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (stating an ALJ must develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") Accordingly, this was not a specific and legitimate reason to reject Dr. Janoian's opinion.

Rather than giving significant weight to the opinion of Plaintiff's treating physician, the ALJ gave significant weight to the state agency doctor because she found that opinion was consistent with the medical record. (AR 28.) The state agency doctor was a non-examining physician. "When an *examining* physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632 (emphasis added). A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of … a treating physician." *Lester*, 81 F.3d at 831 (citations omitted). The state agency doctor gave his opinion on May 23, 2014 finding Plaintiff had the ability to perform light work. (AR 64-65.) The state agency doctor had fewer records to rely on in forming his opinion than the treating physician because a substantial amount of the medical records post-date the state agency doctor's May 2014 opinion. The first medical record is from January 2014 and the last is from February 2016. (AR 253, 316.) Even if the state agency doctor had all of Plaintiff's medical records to review, his non-examining physician opinion of the evidence would still not be substantial evidence upon which the ALJ could rely to reject the treating physician's opinion. *Lester*, 81 F.3d at 831 (citations omitted). Thus, the state agency doctor's opinion is not a specific and legitimate reason to reject Plaintiff's treating physician's opinion.

The ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence in the record to discount the opinion of Plaintiff's treating physician. The error was not harmless because it affects the ultimate question of disability. *Brown-*

*Hunter v. Colvin*, 806 F.3d 487.  Plaintiff would be unable to perform her past relevant work if Dr. Janoian's opinion were given controlling weight and there is no evidence in the record establishing whether she could perform other work.  (*See* AR 28, 55-56.)  Therefore, remand is warranted.

## II.    <u>Remand Is Warranted</u>

Because remand is warranted on the issue of the weight given to Plaintiff's treating physician's opinion, the Court exercises its discretion and declines to reach the issues concerning Plaintiff's credibility and the vocational expert testimony.  However, the brevity of questioning by the ALJ of both Plaintiff regarding her physical impairments and the Vocational Expert is concerning.  (*See* AR 35-59.)   "An adequate hearing record is indispensable because a reviewing court may consider only the Secretary's final decision, the evidence in the administrative transcript on which the decision was based, and the pleadings. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992) (citing *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988); 42 U.S.C. § 405(g)).  Because the Court cannot say based on the record before it that Plaintiff is disabled, or whether the alleged onset date of disability is correct seeing that the current medical records begin in January of 2014, this case is remanded for further proceedings. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

//

//

//

1  IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

2  Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for

3  defendant.

5      LET JUDGMENT BE ENTERED ACCORDINGLY.

7  DATE: January 14, 2019

8      _____
       KAREN L. STEVENSON
9      UNITED STATES MAGISTRATE JUDGE